DAVE STEARNS, ET AL., PETITIONERS, *v.* EIGHTH JUDICIAL DISTRICT COURT OF THE STATE OF NEVADA, IN AND FOR THE COUNTY OF CLARK, ET AL., RESPONDENTS,

No. 3400

October 6, 1943.                                    142 P. (2d) 206.

*Roger Foley* and *Louis Wiener, Jr.,* both of Las Vegas, and *M. A. Diskin,* of Reno, for Petitioners.

*Thruston & McNamee,* of Las Vegas, and *Thatcher & Woodburn,* of Reno, for Respondents.

*Lewis & Hawkins,* of Las Vegas, Amici Curiæ.

## OPINION

By the Court, TABER, J.:

In February 1941 The Western Union Telegraph Company entered into the following contract with Washoe Publishing Company:

"Applicant: Washoe Publishing Co.

"Address: 1109 Luhrs Tower Building,—

Minimum period, One month,
Feb. 10–1941.   Phoenix, Arizona.

"The Western Union Telegraph Company
"General Offices, 60 Hudson Street,
"New York, N. Y.

Application for Special Contract Service

"Service, Regular.

"Monthly Charge: .Approximately $7,000.00.

Payable monthly in advance.

"Installation Charge:

"Facilities, Station Locations and Periods of Service:

"One single Morse lease connecting Washoe Pub. Co., Phoenix, Arizona with Missouri Pub. Co., St. Louis, Mo., Harmony Pub. Co., Kansas City, Kans., Las Vegas Daily Press, Las Vegas, Nev., Tacoma Daily Enterprise, Tacoma, Wash., Northwest News Co., Seattle, Wash., E. M. White News Co., Vancouver, B. C., Metro News Co., Spokane, Wash., Helena News Agency, Helena, Mont., A B C News Co., Butte, Mont., Billings News Agency, Billings, Mont., Yuma Allied Press, Yuma, Ariz., and Tia Juana News Co., at Agua Caliente Race Track, Tia Juana, Baja Calif.

"The undersigned requests The Western Union Telegraph Company to furnish, subject to and in accordance with its lawful rates and regulations, the service described (including such modifications therein as may be ordered from time to time), for the established minimum period and thereafter until terminated by written notice from the undersigned, unless earlier terminated by the Company pursuant to its regulations, and agrees

to pay for such service according to the Company's established billing practices. The undersigned agrees that the facilities furnished under this tariff shall not be used for any purpose or in any manner directly or indirectly in violation of any federal law or the laws of any of the states where the equipment is located, and that the company may discontinue the service to any drop or connection or to all drops and connections when it receives notice from federal or state law enforcing agencies that the service is being supplied contrary to law. This application shall become binding on both parties when accepted by the Company, such acceptance to be evidenced by the signature of one of its officers hereon, or by the establishment of the service.

"(Signed)  Washoe Publishing Co.
Applicant

"By (Sgd) A. Corica; Prop.
Title

"2/5/41
Date

"Accepted by the Company
"(sgd) B. D. Barnett
Assistant Vice President

"Feb. 13, '41
Date

In June, 1942, said Washoe Publishing Company entered into the following contract with M. M. Sedway:

"Complete General and Sport-News
"Washoe Publishing Company
"P. O. Box 3855
"Phone 3—1607
"Phoenix, Arizona
"June 24, 1942

"Mr. M. M. Sedway
"Las Vegas
"Nevada
"Dear Sir:
"Confirming our conversation of this date Washoe

Publishing Company agrees to deliver to you at Las Vegas, Nevada, news service with exclusive privilege to you to control and distribute this news service in Las Vegas, Nevada, and Clark County, Nevada, for a period of five years, starting July 13, 1942.

"You will pay Washoe Publishing Company for this service the minimum of $900.00 per week, payable weekly in advance. Any adjustments in the price of this service will be mutually agreed upon between you and Washoe Publishing Company.

"This news service will be transmitted and distributed to you at Las Vegas, Nevada, by the Washoe Publishing Company over the facilities of the Western Union Telegraph Company under a written contract which Washoe Publishing Company has made with Western Union Telegraph Company.

"Should an arrangement be made by Washoe Publishing Company for the use of other facilities for the transmission and distribution of this news, Washoe Publishing Company reserves the right to transmit and distribute service to you over such facilities.

"Yours very truly,
"Washoe Publishing Company,
"By A. Corica,
"Proprietor

"AC:emh"

On August 6, 1943, Sedway (Soneva News Service) commenced suit for an injunction against the telegraph company. The verified complaint, after alleging the execution of the two contracts above mentioned, went on to allege that defendant Western Union, in violation of its said agreement with Washoe Publishing Company, was furnishing wire service and news service pertaining to horse racing to others in Clark County than plaintiff, and in particular to Dave Stearns and Sam Stearns, doing business at Las Vegas as the Turf Club and Bar. The district court, on said verified complaint, issued an exparte injunction pendente lite restraining the

telegraph company from furnishing such service to any other than plaintiff in Clark County.

On August 7, by leave of court, Dave Stearns and Sam Stearns, doing business as Turf Club and Bar, intervened in said action. In their complaint in intervention they alleged that Western Union had advised them that it would not continue furnishing them turf or racing wire service until said injunction was dissolved; that they were entitled by contract to receive such service from defendant telegraph company; and that they would be irreparably damaged if the injunction were allowed to continue in effect.

On August 11 intervenors noticed a motion to dissolve the injunction. On the following day they filed and served an amended complaint in intervention which contained also an answer to plaintiff's complaint and a demurrer thereto, the demurrer being based on the ground that the court had no jurisdiction of the subject matter of the action, and on the further ground that the facts alleged in the complaint were insufficient to constitute a cause of action against the intervenors. On the same day they also filed and served a separate demurrer to said complaint on the same grounds.

On August 12 plaintiff noticed a motion to strike all papers theretofore filed by intervenors. On that day the district court heard the motion to dissolve the injunction and the motion to strike. At the conclusion of the consolidated hearing of these two motions, the trial judge announced from the bench that he would take the matters presented under submission, carry the original file to Los Angeles, where he was going that evening, for the purpose of studying the matters submitted, and would within a few days file a written decision thereon. The record does not disclose whether such decision has been filed.

On August 16 defendant demurred to plaintiff's complaint, upon the grounds, among others, that the court had no jurisdiction of the subject matter of the action for the reason that the subject matter involved was a

matter of interstate commerce, and that said complaint did not state facts sufficient to constitute a cause of action. On the same day defendant noticed a motion to make said complaint more definite and certain, and a motion to dissolve the injunction, the latter based on the same two grounds, among others, as its demurrer, and upon the further ground that plaintiff's complaint on its face showed that "the contract entered into between plaintiff and defendant, if any was so entered into, purports to grant exclusive service to one person by a common carrier, which is prohibited by and contrary to law."

On August 17, upon petition of said Dave and Sam Stearns, an alternative writ of prohibition issued out of this court restraining respondents from hearing any further matters or making any further orders in said district court action until further order of this court.

On September 1 plaintiff filed, as of course, an amended complaint in said action. In this complaint the contract between defendant and Washoe Publishing Company, and that between the latter and plaintiff, were set forth in haec verba; such was not the case in his original complaint. In said original complaint plaintiff alleged, not only that Washoe Publishing Company had given him the exclusive right, within Clark County, to all wire service pertaining to horse racing information and turf service, but also that defendant had previously given Washoe Publishing Company the exclusive right to such service, which right the latter company had assigned to plaintiff.

In his amended complaint plaintiff alleged, inter alia, that Washoe Publishing Company, by virtue of its contract with defendant, had the right to receive exclusively such news service as it was able to obtain from various sources pertaining to horse racing, racing service, turf information, racing news, racing results, odds on races, and horses in races from various tracks where horse races are run in the United States. It was further alleged that defendant, in violation of its said

agreement with Washoe Publishing Company, and of plaintiff's right under his contract with the latter company, had installed or permitted the installation of a wire or loop from its facilities, so that said wire service was being diverted to the petitioners (Turf Club and Bar) in the city of Las Vegas, without the consent and over the protests of plaintiff.

On September 2, 1943, respondents filed herein their response and answer to the petition, and on the same day the petition and the answer and response thereto were heard by this court. Testimony was given by Dave Stearns for the purpose of showing that petitioners are beneficially interested.

In the petition it is alleged that the Turf Club and Bar had been receiving said wire service over the facilities of defendant for a long time, and until the injunction was served; that petitioners have been greatly damaged as a result of the discontinuance of the service; that such service is interstate commerce; that defendant is a common carrier engaged in such commerce; that respondents are without jurisdiction in said action; that the proceedings and injunction in said action were and are in excess of their jurisdiction; and that plaintiffs have no plain, speedy and adequate remedy in the ordinary course of law.

Respondents contend that the district court has jurisdiction of the subject matter in the action in that court; that Washoe Publishing Company had the right to sell to plaintiff the exclusive right to distribute said news and information relative to horse racing; that the contract sued on by plaintiff is valid; that petitioners have a plain, speedy and adequate remedy in the ordinary course of law, and that they are estopped to raise the question of jurisdiction.

Messrs. Lewis & Hawkins, as friends of the court, take the position that the contract sued on by plaintiff is void in that it creates an unlawful preference and discrimination and is contrary to public policy; that the trial court is without jurisdiction to proceed in the

action, whether the news service is interstate or intrastate; and that petitioners have no plain, speedy or adequate remedy in the ordinary course of law.

■ Prohibition will not lie unless the lower tribunal is without or has acted in excess of its jurisdiction. The court does not agree with the contention that the district court is without jurisdiction of the subject matter of the action because interstate commerce is involved. It is true, as stated in 15 C. J. S., Commerce, sec. 15, p. 273, that: "Where congress regulates commerce by enacting a statute, within its competency, that covers the same subject matter as, or is in direct conflict with, a state statute, the exercised power of congress is not only supreme and paramount but also exclusive, superseding the state law and excluding additional or further regulation covering the same subject by the state legislature." See also 15 C. J. S., Commerce, sec. 81, and 11 Am. Jur., Commerce, secs. 10, 82. It is likewise true that in many matters involving interstate commerce the jurisdiction of the federal courts is exclusive. 11 Am. Jur., Commerce, sec. 157; 21 C. J. S., Courts, sec. 525, p. 795. But in the case at bar we are satisfied that the district court has jurisdiction of the subject matter. Grubb v. Public Utilities Comm., 281 U. S. 470, 50 S. Ct. 374, 74 L. Ed. 972; Detroit, M. & T. S. L. Ry. v. City of Monroe, D. C., 262 F. 177; State of Missouri ex rel. St. Louis, B. & M. R. Co. v. Taylor, 266 U. S. 200, 45 S. Ct. 47, 69 L. Ed. 247, 42 A. L. R. 1232; 21 C. J. S., Courts, sec. 526, pp. 803, 804; 11 Am. Jur. 129–131.

Notwithstanding the district court has jurisdiction of the subject matter of the action, the further contention is made that in issuing the injunction pendente lite that court acted in excess of its jurisdiction. In support of this contention it is asserted that the contract between Western Union and Washoe Publishing Company gives rise to unlawful preference and discrimination, and violates certain provisions of the communications act of 1934; 47 U. S. C. A. sec. 202. Subsections (a) and (c) read, respectively: "(a) It shall be unlawful for any

common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services for or in connection with like communication service, directly or indirectly, by any means or device, or to make or give any undue or unreasonable preference or advantage to any particular person, class of persons, or locality, or to subject any particular person, class of persons, or locality to any undue or unreasonable prejudice or disadvantage." " (c) Any carrier who knowingly violates the provisions of this section shall forfeit to the United States the sum of $500 for each such offense and $25 for each and every day of the continuance of such offense."

If the contract last above mentioned violates said sec. 202, it is void. 12 Am. Jur., Contracts, sec. 161; Restatement of the Law of Contracts, vol. 2, sec. 580.

■ Plaintiff alleges in both his complaints that the contract between Western Union and Washoe Publishing Company gave the latter the exclusive right to the horse racing wire service, and that this exclusive right was in turn given plaintiff by the contract of June 1942 between him and. Washoe Publishing Company. In the latter contract Washoe Publishing Company agrees to deliver to plaintiff news service "with exclusive privilege" to him to control and distribute this news service in Las Vegas, and Clark County, Nevada. But neither the word "exclusive" nor the expression "exclusive privilege" occurs in the contract between Western Union and Washoe Publishing Company; nor does any exclusive privilege appear to be given in express terms by that contract. The allegations in plaintiff's complaints that exclusive right to the service in question was given Washoe Publishing Company may represent his interpretation of the contract with respect to that particular matter, but cannot be regarded as allegations of fact.

■ This court has no judicial knowledge as to what is meant by "one single Morse lease," nor can it take judicial notice of the modus operandi under such a lease.

There is not sufficient factual information in the petition, the response and answer thereto, or the testimony of Dave Stearns to enable the court to determine whether, without breaching said contract, Western Union could, for a proper consideration, grant to others than Washoe Publishing Company the same service as was given it by that contract. Without a full knowledge of the meaning of the contract, the court is in no position to decide whether it creates an unlawful preference in favor of Washoe Publishing Company and unlawfully discriminates against others who might apply for the same service. It frequently happens that in order to show the illegality of a contract, resort must be had to evidence aliunde. 12 Am. Jur., Contracts, sec. 224; 17 C. J. S., Contracts, sec. 596. Whether such evidence is admissible on the hearing of the return to an alternative writ of prohibition need not be determined, for the reason that no such evidence was offered at the hearing in this proceeding.

■■ The writ of prohibition should issue only where the absence or excess of jurisdiction is clear, and ordinarily it will not be issued in doubtful cases. 50 C. J. 657, 658, nn. 83, 84; 42 Am. Jur. 142, n. 5. As there is an insufficient basis of fact to enable the court to decide whether the district court exceeded its jurisdiction in issuing the injunction, the petition must be denied.

Alternative writ vacated, and proceeding dismissed.